Friday, July 3rd. The decrees in all three of the suits were unanimously afiurmed, by the whole Court, consisting of all the Judges.
Judge Fleming
delivered the following opinion.
From an attentive examination of the records in these suits, it appears to me that neither the appellant, nor either of those under whom he claims, had ever any equitable title to the 400 acres oí' land in question; nor a legal one, until, by a piece of artful management, not much to his credit, he got a friend to obtain a patent for it, in the year 1?88, during the pendency of his caveat against the rightful owner, which he, in his answer to Syme's bill, says, “ was afterwards dismissed, because .there was found to be considerable difficulty in bringing it to trial.” But, as I conceive, because, pending the caveat, his friend had obtained a patent for the land, which was conveyed to him.
Let us examine his equitable title, which he conceives,-, to be indubitable. Mis father, under whose will he claims, in the year 1 ?55, purchased 3500 acres of patented land contained in two grants; the one for 1S00 acres, lying in the North-Garden, and the other for 1600 acres, tying in the South Garden, and adjoining the land in controversy. This land was purchased of the late Colonel John Syme, who had therein only a life estate, in right of his wife, then an infant, not more than 15 or 16 years of age; and who, for the sum of £ 800, sold the land to the late Mr. William Nelson (father of the appellant,) and give a mortgage of another estate to the purchaser, to secure the title at future day; and thus defeated the inheritance of his own offspring.
*360 Possession of the land, so purchased, was immediately given to Mr. Nelson, who, supposing the land in question (for which there was an entry and survey in the name of Mildred Meriwether, then the infant wife of Colonel .Syme,) to have been included in his purchase, actually settled his people thereon — neither he nor Colonel Syme having any knowledge that such an entry and survey, (which were made in the year 1740,) ever existed. And this mistake of Mr. Nelson, of his agent, in settling land, which of right belonged to another, (owing entirely to their own inattention and negligence, as the boundaries 6f the purchased lands are minutely described in the patents,) was to give the appellant an equitable title against the infant presumptive heir of an infantyEne covert; which heir had already been defeated of his inheritance of 3500 out of thirty nine hundred acres of land! Of what, it may be asked, has the appellant to complain i His father, under whom he claims, purchased, and supposed he had purchased, 3500 acres of land, only., of which he was put into immediate possession, and the title secured; and there is not even a suggestion that there is a deficiency in quantity.
The reasoning' of the, appellant on the subject seems to amount to this — “ I have purchased, and paid for your “ coat, and have (through mistake, and without your knowledge,) almost worn out your, cloak; and am therefore entitled to that also.”
Let us now take a short chronological view of the title of John Syme, the son, who was father of the appellees, John Syme and Mildred Syme, (now Mildred Cochran') and heir of Mildred Meriwether, who died the wife of John Syme the elder, about the time she came of age ; in whose name, and for whose benefit, the entry for 400 acres of land (now the subject of controversy,) was surveyed the 22nd of March, 1740. But neither of the parties had any knowledge of such entry and survey until many years after John Syme, the son and heir, came of age; soon after which, he, by indenture, bearing date the 1st of September, 1777, confirmed to the appellant a complete title to the lands purchased by his father of John Syme the elder, and thereby obtained a release of the estate mortgaged by the latter, to secure that title.
Sometime in the year 1787, John Syme, the son and heir, found among the papers of his grandfather Nicholas Meriwether, the entry and survey beforementioned, which was the first discovery he ever made of them; and, on the 8th of October, the same year, he returned them to *361 the Register’s Office, in order to obtain a patent thereon. A warrant was laid on the land, and a survey thereof made, in the name of William Nelson, the 23d ol Novcm-ber; which was returned to the Land-Office the 18th of December following ; and, on the 4th of April 1788, the appellant entered a caveat against the patent oí Syme, which he says, in his answer, “ was really to contest the right between them” — and, had that been truly the case, there would have been nothing blameahle in his conduct: but we have already seen, that, pending the caveat, his friend obtained a patent from the survey of November, 1787, and, soon alter, made him a conveyance of the land. How long it was afterwards before the caveat was dismissed docs not appear; but Syme did not obtain his patent, until the 20th of june, 1791.
I shall make no comments on these transactions, farther than to observe, that it is clearly my opinion that Syme's equitable title is paramount to, and ought to supersede the legal title of the appellant, thus surreptitiously obtained; also, I conceive, never had even the shadow of equity in his favour; and he may think himself fortunate, that he has not been compelled to account for the rents and profits whilst the land was in his occupation.
The case of Picket v. Dowdall, (2 Wash. 106.) was cited in the argument, by the appellant’s counsel; but the circumstances in that case were so widely different from this, that it seems unnecessary to take further notice of it.
And upon the whole, I concur in the opinion, that all three of the decreess ought to be affirmed.